# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

WILLIE RAINER,

    Plaintiff,

*v*.　　　　　　　　　　　　　　　　CASE NO. 07-CV-14472

COMMISSIONER OF　　　　　　　　DISTRICT JUDGE PAUL V. GADOLA
SOCIAL SECURITY,　　　　　　　　　MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.　　RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 8, 9.)

Plaintiff was 55 years of age at the time of the most recent administrative hearing. (Tr. at 24.) Plaintiff's relevant employment history included work as a customer counter clerk and delivery driver for United Parcel Service ("UPS") from 1979 to August 3, 2004. (Tr. at 98.)

Plaintiff filed the instant claim on October 12, 2004, alleging that he became unable to work on December 29, 2003. (Tr. at 46.) The claim was denied initially and upon reconsideration. (Tr. at 37.) In denying Plaintiff's claims, the Defendant Commissioner considered "s/p r wrist fx" and "low back pain, s/p surgery" as possible bases of disability. (*Id.*)

On March 5, 2007, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Joel G. Fina, who considered the case *de novo*. In a decision dated May 14, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 14-26.) Plaintiff requested a review of this decision on May 16, 2007. (Tr. at 9-12.)

The ALJ's decision became the final decision of the Commissioner when, on September 18, 2007, the Appeals Council denied Plaintiff's request for review. (Tr. at 3-6.) *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). On October 22, 2007, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility

to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record,

regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

5

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534. " If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin v. Comm'r*, 475 F.3d 727, 730 (6th Cir. 2007).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v), (g).

### D. Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was treated by Wilbur Boike, M.D., a neurologist with Michigan Spine Care, for right wrist and hand discomfort, possibly due to a previous wrist fracture, from March 2004 to October 2005. (Tr. at 123-34.) Plaintiff was also treated by Jeffrey Levin, M.D., who diagnosed bilateral carpal tunnel syndrome, right greater than left, C6-7 radiculopathy, and left cubital tunnel syndrome after performing an EMG in November 2004. (Tr. at 118-21.) Dr. Levin referred Plaintiff to Jonathan Rene, M.D., in December 2004, who concluded that he "failed to appreciate any significant abnormalities" in Plaintiff's hand, finding "negative Tinel and

Phalen's signs." (Tr. at 122.) Dr. Rene also stated that Plaintiff's "back and shoulder symptoms . . . seem to be insignificant in comparison to those of the right hand and wrist [and] [t]hough there may be some underlying arthropathy there, his symptoms are not of an arthritic nature as structural evaluation did not indicate loss of integrity of either tendons, joints or muscle strength or for that matter, neurally, as he states he had EMG obtained." (*Id.*)

In June 2005, Edward F. Burke, D.O., of Hand Surgery Associates, performed reconstructive surgery to repair ligaments and remove two pins from the right wrist that were the result of a prior "capsulodesis," i.e., fusion, of the right wrist done in April 2005 to repair a fractured scaphoid bone. (Tr. at 152, 150, 157-78.) However, Plaintiff continued to experience pain and sought further medical intervention. Plaintiff sought follow up treatment with Dr. Burke and underwent an arthrogram of the right wrist in December 2005 which revealed "no evidence of an instability with radial and ulnar flexion." (Tr. at 150-56, 157-62.) At a follow up visit in August 2005, Dr. Burke noted that Plaintiff "can work with a weight limit of ten pound" (Tr. at 154), and in April 2006, Dr. Burke noted that he "would return him to work in a limited capacity, with a 20-pound weight restriction." (Tr. at 148.)

Plaintiff participated in occupational therapy and physical therapy. Physical therapy took place from June through August 2005. (Tr. at 143-49.) Upon discharge, the therapist noted that Plaintiff's complaints of right wrist pain were "moderately improved" and that he "has made objective improvements in strength and ROM," but would benefit more from occupational therapy "to continue with work hardening." (Tr. at 143.) As to occupational therapy, Plaintiff attended from August 2005 until he was discharged in October 2005. (Tr. at 135-42.) Upon discharge, his therapist noted that Plaintiff:

> **has increased tolerances to heavy job demands of lifting 70# on an occasional basis. He continued to perform lifting, carrying pushing and pulling with good**

7

**body mechanics and posture and no verbal cues for technique. He performs positional tolerances such as kneeling, crouching, pivoting, squatting and elevated work with no difficulty.** Patient has also continued to demonstrate abilities on the BTE Primus to simulate repetitive right wrist motion in flexion, extension, ulnar and radial deviation and pronation, supination with fluid movements and increased in tolerance to these tasks. **Subjectively, on this date, Mr. Rainer has reported there has been no change in his symptoms since evaluation.** He continues to feel intermittent pain and tingling in the right MCP joint of the thumb, wrist and forearm, and he was unable to state specific activities that flare his symptoms. **He does feel he is 'getting stronger.'** He also stated that he does not feel he could return to his work duties for an eight hour shift, with complaints including decreased tolerance to using the mouse and touch screen on the computer. This therapist recommended using left hand for some of the computer use and he replied that he would be unable to do that on the job. He also indicated that 'do you see how I have to hold my hand when it starts hurting?, UPS is not going to let me hold my hand until the pain goes away when I am working with a customer.' **This therapist attempted to make a correlation that if he is going to have to deal with pain at some level for a long time then he may as well be productive and working, now that he has educational tools to control and manage his pain** . . . Based on patient's overall performance during his work hardening program, **this therapist feels patient could at least attempt a return to work at a non-restricted capacity within the next couple weeks**.

(Tr. at 135 (emphasis added).)

A residual function capacity ("RFC") assessment performed on Plaintiff by a DDS physician in November 2004 concluded that Plaintiff is able to occasionally lift 20 pounds, frequently lift up to ten pounds, stand and/or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and that Plaintiff's pushing and pulling abilities (including use of foot and hand controls) is unlimited. (Tr. at 111.) The assessment also concluded that Plaintiff has no postural, manipulative, visual, communicative, or environmental limitations. (Tr. at 112-14.)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since December 29,

2003, and that Plaintiff meets the insured status requirements through December 31, 2010. (Tr. at 19.) At step two, the ALJ found that Plaintiff's bilateral carpal tunnel syndrome, C6 radiculopathy, left cubital tunnel syndrome and right lateral epicondylitis were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform his previous work as a customer counter clerk and delivery driver for UPS. (Tr. at 24.) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of skilled jobs available such as production clerk, inventory clerk, general office clerk, and a significant number of unskilled jobs available, such as security guard, counter clerk, and file clerk in the national and regional economy, i.e., the lower peninsula of Michigan. (Tr. at 25.)

Using the Commissioner's grid rules as a guide, the ALJ found that Plaintiff has the residual functional capacity to perform a limited range of light work (Tr. at 25), and he thus concluded that Plaintiff would remain able to perform a significant number of jobs existing in the national and regional economy. (*Id.*)

**F.     Analysis and Conclusions**

**1.     Legal Standards**

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 23.) Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work,

unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff also contends that the ALJ did not properly analyze the credibility of Plaintiff's subjective complaints of pain. (Dkt. 8 at 6-12.) Under the test set forth in *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986), "[f]irst the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment . . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques." If there is, Plaintiff is not required to establish objective evidence of the pain itself but the court will examine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Felisky,* 35 F.3d at 1038-39. The Regulations provide the following guidelines in evaluating whether the medically

determinable impairment could reasonably be expected to produce a Plaintiff's alleged symptoms such as pain:

> [T]he entire record of medical and nonmedical evidence will be considered in evaluating the intensity and persistence of those symptoms, including the following factors: (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use of have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In the instant case, the ALJ expressly considered all of the above factors and considered Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms to be "not entirely credible." (Tr. at 22, 20-2.) I suggest that substantial evidence supports the ALJ's finding. Plaintiff indicated that he cooks his own breakfast and lunch (but his wife cooks dinner), washes dishes, gets the mail, sweeps, irons, uses a riding mower, attends church, and shops approximately once a week for 30 to 60 minutes at a time. (Tr. at 84, 86-7.) There is no evidence that Plaintiff's symptoms are of any specific duration or frequency, nor is there evidence of any aggravating or precipitating factors. (Tr. at 112-14.) Plaintiff's other treatments, such as physical and occupational therapy showed only marked improvement in strength and range of motion and knowledge of tools to handle Plaintiff's remaining symptomology post-surgery. (Tr. at 143,135.)

Plaintiff also argues that the ALJ failed to give controlling weight to the treating physician's, Dr. Levin's, opinion and failed to explain why he did so. (Dkt. 8 at 12-16.) However, Plaintiff has failed to point to any opinion evidence from Dr. Levin to support his claim of disabling pain; thus, it is not clear what opinion should have been elevated. Dr. Levin's diagnoses of Plaintiff's wrist condition pre-surgery is not an opinion regarding Plaintiff's abilities or level of pain. Dr. Levin eventually referred Plaintiff to other doctors for surgery and treatment. I suggest that substantial evidence supports the ALJ's reasoning.

I further conclude that the opinions of the physicians to whom Plaintiff was referred for treatment and surgery are unanimous in suggesting that Plaintiff has the ability to return to work, and thus suggest that substantial evidence supports the finding of disability. Dr. Rene "failed to appreciate any significant abnormalities" in Plaintiff's hand and also found that Plaintiff's back problems to be "insignificant" and without "loss of integrity of either tendons, joints or muscle strength or for that matter neurally . . . ." (Tr. at 122.) Plaintiff was also referred to a hand specialist, Dr. Burke, who performed surgery on Plaintiff's wrist and found that, post-surgery, there was "no evidence of an instability with radial and ulnar flexion" and who opined that Plaintiff could "work with a weight limit of ten pounds" in August 2005 and that Plaintiff should return to work with a 20-pound restriction in April 2006. (Tr. at 150, 154, 148.) Although not a physician, the occupational therapist believed that Plaintiff could and should return to work without restriction in October 2005. (Tr. at 135.)

The ALJ's findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed Plaintiff's individual physical and mental impairments in harmony with the objective record medical evidence as presented by all the treating and examining physicians, as well as the daily activities described by Plaintiff

himself. (Tr. at 84, 86-87.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

"The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey v. Sec'y of HHS,* 987 F. 2d 1230, 1235 (6th Cir. 1993). This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. As indicated above, I suggest that substantial evidence supports the ALJ's credibility determination and therefore, also find that substantial evidence supports the hypothetical provided to the VE.

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are

advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  | s/ $\mathcal{C}$harles $\mathcal{E}$ $\mathcal{B}$inder |
|---|---|
|  | CHARLES E. BINDER |
| Dated: May 21, 2008 | United States Magistrate Judge |

### **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James Brunson, Mikel Lupisella, and the Commissioner of Social Security, and served on U.S. District Judge Gadola in the traditional manner.

Date:  May 21, 2008                     By       s/Patricia T. Morris
                                        Law Clerk to Magistrate Judge Binder